ROSIE M. JOHNSON, IRENE WALLACE, INDIVIDUALLY AND EX. REL. PLAINTIFFS V. ANTIOCH UNITED HOLY CHURCH, INC., HENRIETTA McGLENN, DIANNE ARTIS, AND LARRY HANKINS, SR. DEFENDANTS

No. COA11-24

(Filed 16 August 2011)

## 1. Jurisdiction—subject matter—First Amendment not prohibitive—dismissal improper

The trial court erred in granting defendants' motion to dismiss for lack of subject matter jurisdiction as the trial court was not prohibited by the First Amendment from addressing plaintiffs' claims. Plaintiffs' claims did not implicate an impermissible analysis by the court based on religious doctrine or practice but rather required the trial court to apply neutral principles of law to determine whether, *inter alia*, defendants complied with the North Carolina Nonprofit Corporation Act.

## 2. Pleadings—sufficient allegations—Rule 11 sanctions—erroneous

The trial court erred in granting defendants' motion for Rule 11 sanctions based on the factual and legal insufficiency of plaintiffs' complaint. Plaintiffs' allegations were warranted by North Carolina statutes and common law.

Appeal by Plaintiffs from Order entered 20 September 2010 by Judge Arnold O. Jones in Pender County Superior Court. Heard in the Court of Appeals 25 May 2011.

*Charles M. Tighe for Plaintiffs-appellant.*

*Erma L. Johnson for Defendants-appellee.*

HUNTER, JR., Robert N., Judge.

Rosie M. Johnson, Irene Wallace, and Antioch United Holy Church, Inc. ("Antioch") (collectively "Plaintiffs"), appeal from the trial court's 20 September 2010 Order dismissing their claims, for lack of subject matter jurisdiction, against Henrietta McGlenn, Dianne Artis, Larry Hankins, Sr. and Antioch (collectively "Defendants"). In its Order, the trial court also granted Defendants' Motion for Rule 11 Sanctions. Plaintiffs argue the trial court erred in concluding that resolution of Plaintiffs' claims required the court to address ecclesiasti-

cal matters in violation of the First Amendment of the United States Constitution. Plaintiffs further argue the trial court erred in awarding Defendants reasonable attorneys' fees upon concluding there was no legal or factual basis for Plaintiffs' claims. We reverse the trial court's Order.

## I. Facts & Procedural History

Antioch is a small congregational church of approximately 40 members located in Rocky Point, North Carolina. Antioch was incorporated under the North Carolina Nonprofit Corporation Act in 1998. Plaintiffs Johnson and Wallace were incorporators of Antioch. At the organizational meeting of the original Board of Directors in March 1999, Defendant Henrietta McGlenn was appointed President and Plaintiff Wallace was appointed Treasurer of Antioch. Defendant Hankins now serves as Antioch's Treasurer.

At the time of its incorporation, Antioch did not have a permanent place of worship or business. In May 1999, Wallace deeded .94 acres of land to Antioch as a building site for the church's sanctuary and offices. Additionally, in 2001, Wallace donated $150,000 for the construction of the church's physical facilities and served, without compensation, as the Building Coordinator for several months of that year.

Although the record is unclear as to the events that occurred in the intervening years, Defendants assert that Plaintiffs have filed three previous lawsuits against Antioch and McGlenn since 2008. Plaintiffs commenced this action against Defendants on 14 June 2010 alleging a number of violations of the North Carolina Nonprofit Corporation Act and intentional infliction of emotional distress upon Wallace.

In the Complaint, Plaintiffs allege that for a number of years Antioch has not had a duly elected board of directors and that the corporate powers of the church have been exercised by Defendants McGlenn, Artis, and Hankins, in violation of Antioch's bylaws. Plaintiffs allege Defendants have failed to maintain audited financial statements as required by Antioch's bylaws. Additionally, Plaintiffs allege Antioch is in violation of the North Carolina Nonprofit Corporation Act in that it does not keep permanent records of the meetings of its members or of its board of directors; does not keep a record of its members; and does not maintain appropriate accounting records, as required by N.C. Gen. Stat. § 55A-16-01.

The Complaint additionally alleges that McGlenn, Artis, Hankins, and others at Antioch have wasted Antioch property and caused Antioch to engage in transactions prohibited by the Internal Revenue

Code, 26 U.S.C. § 503(b). Plaintiffs allege these actions have put Antioch's tax-exempt status in jeopardy, and have thereby put Wallace, Johnson, and other members of Antioch at risk of having to pay federal and state income taxes for funds received by Antioch.

As for the claim of intentional infliction of emotional distress, the Complaint alleges McGlenn wrote and delivered a letter to Wallace as notice of the "removal of her name" as a member of Antioch. Plaintiffs allege this was done without the authority of Antioch, or a duly recorded vote of its members, in violation of N.C. Gen. Stat. § 55A-6-31. Plaintiffs further allege McGlenn delivered this letter to Wallace "with the intent to vex, intimidate and harm Wallace without justification," and that McGlenn's conduct in doing so was "outrageous," causing Wallace "severe emotional harm, humiliation and distress."

Defendants did not answer Plaintiffs' Complaint and filed a Motion to Dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), for failure to state a claim upon which relief could be granted, and a Motion for Sanctions pursuant to N.C. Gen. Stat. § 1A-1, Rule 11.

Defendants' Motions came on for hearing on 23 August 2010 in Pender County Superior Court, Judge Arnold O. Jones presiding. During the hearing, Defendants made an oral motion to dismiss for lack of subject matter jurisdiction, pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(1). Defendants argued resolution of Plaintiffs' claims would require the trial court to resolve ecclesiastical matters, which is prohibited by the First Amendment of the United States Constitution. As for their request for Rule 11 sanctions, Defendants argued Plaintiffs brought the claims solely for the purpose of harassment and that the claims are factually and legally insufficient. Subject matter jurisdiction and the propriety of sanctions were the only issues addressed during the hearing; no evidence related to Plaintiffs' claims was presented.

In its 20 September 2010 Order, the trial court concluded Plaintiffs' claims "involve[] an internal church governance dispute" and that the claims could not be resolved solely by neutral principals of law. The trial court concluded, *inter alia*, that "seeking a court's review of the matters in the Complaint is no different than asking a court to determine whether a particular church's grounds for membership are spiritually or doctrinally correct or whether a church's charitable pursuits accord with the congregation's beliefs." The trial court further concluded there was "no legal or factual basis supporting the allegations asserted in this Complaint." Consequently, the trial

**JOHNSON v. ANTIOCH UNITED HOLY CHURCH, INC.**

[214 N.C. App. 507 (2011)]

court granted Defendants' Motion to Dismiss and awarded Defendants attorneys' fees in the amount of $2,580.31. Plaintiffs gave timely notice of appeal from this Order.

## II. Jurisdiction & Standard of Review

Jurisdiction in this Court is proper pursuant to N.C. Gen. Stat. § 7A-27(b) (2009). A motion to dismiss for lack of subject matter jurisdiction is reviewed *de novo* pursuant to Rule 12 of the North Carolina Rules of Civil Procedure. *Burgess v. Burgess*, ___ N.C. App. ___, ___, 698 S.E.2d 666, 668 (2010) (citing *Harper v. City of Asheville*, 160 N.C. App. 209, 215, 585 S.E.2d 240, 244 (2003)). "Under the *de novo* standard of review, this Court 'considers the matter anew and freely substitutes its own judgment for that of the [trial court].' " *Burgess*, ___ N.C. App. at ___, 698 S.E.2d at 668 (quoting *In re Appeal of the Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)). When a trial court reviews a motion to dismiss for lack of subject matter jurisdiction and confines its evaluation to the pleadings, it must accept the allegations in the complaint as true and construe them in a light most favorable to the plaintiff. *Smith v. Privette*, 128 N.C. App. 490, 493, 495 S.E.2d 395, 397 (1998). The trial court's decision whether to impose sanctions under Rule 11 is also subject to *de novo* review. *Peters v. Pennington*, ___ N.C. App. ___, ___, 707 S.E.2d 724, 742 (2011) (citing *Turner v. Duke Univ.*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989)).

## III. Analysis

### A. Subject Matter Jurisdiction

[1] Plaintiffs first argue the trial court erred in granting Defendants' Motion to Dismiss for lack of subject matter jurisdiction. We agree.

The First Amendment of the United States Constitution prohibits a civil court from becoming entangled in ecclesiastical matters. *Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 449, 21 L. Ed. 2d 658, 665 (1969) ("First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice.") However, not every dispute involving church property implicates ecclesiastical matters. *Id.* ("Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property.") Thus, while circumscribing a court's authority to resolve internal church disputes, the First Amendment does not provide religious organiza-

tions absolute immunity from civil liability. *Privette*, 128 N.C. App. at 494, 495 S.E.2d at 397 (addressing former church employees' claims of negligent supervision and retention against their former employer).

Accordingly, this Court is not forbidden from resolving disputes by "neutral principles of law, developed for use in all property disputes." *Presbyterian*, 393 U.S. at 449, 21 L. Ed. 2d at 665; *see Tubiolo v. Abundant Life Church, Inc.*, 167 N.C. App. 324, 329, 605 S.E.2d 161, 164 (2004) (holding that courts can adjudicate property disputes as well as exercise jurisdiction over the narrow issue of whether bylaws of the church were properly adopted), *appeal dismissed, disc. rev. denied,* 359 N.C. 326, 611 S.E.2d 853, *cert. denied,* 546 U.S. 819, 163 L. Ed. 2d 59 (2005). "[T]he dispositive question is whether resolution of the legal claim requires the court to interpret or weigh church doctrine." *Privette*, 128 N.C. App. at 494, 495 S.E.2d at 398.

Plaintiffs' Complaint contains two untitled claims. While Plaintiffs' first claim for relief may be liberally construed to implicate additional causes of action, we discern that Plaintiffs allege Defendants have wasted corporate assets without proper authority under Antioch's bylaws, caused church assets to inure to the benefit of private individuals, and failed to keep appropriate records of its activities. Plaintiffs further allege these acts have threatened the church's tax-exempt status and exposed Plaintiffs to liability for federal and state income tax for funds received by Antioch.

Whether Defendants' actions were authorized by the bylaws of the church in no way implicates an impermissible analysis by the court based on religious doctrine or practice. As stated by our Supreme Court in *Atkins v. Walker,*

> What is forbidden by the First Amendment . . . is a determination of rights to use and control church property on the basis of a judicial determination that one group of claimants has adhered faithfully to the fundamental faiths, doctrines and practices of the church prior to the schism, while the other group of claimants has departed substantially therefrom.

284 N.C. 306, 318, 200 S.E.2d 641, 649 (1973). Rather, the claim in this case requires the trial court to apply neutral principles of law to determine whether, *inter alia,* Defendants complied with the North Carolina Nonprofit Corporation Act. *See* N.C. Gen. Stat. § 55A-2-06 (requiring corporations to adopt bylaws for "regulating and managing the affairs of the corporation"); N.C. Gen. Stat. § 55A-16-01 (requiring

corporations to, *inter alia*, maintain permanent records of the meetings of its board of directors and its members, as well as accounting records); N.C. Gen. Stat. § 55A-13-02(c) (defining corporations' authorized distributions, and stating, "a corporation other than a charitable or religious corporation may make distributions to purchase its memberships"). Thus, while courts are prohibited from making determinations based on religious doctrine, " '[w]here civil, contract or property rights are involved, the courts will inquire as to whether the church tribunal acted within the scope of its authority and observed its own organic forms and rules.' " *Atkins*, 284 N.C. at 320, 200 S.E.2d at 651 (quoting *W. Conference of Original Free Will Baptists of N.C. v. Creech*, 256 N.C. 128, 140-41, 123 S.E.2d 619, 627 (1962)).

Defendants' insistence that allowing the trial court to address the validity of these alleged acts is tantamount to seeking the court's review of whether the church's "charitable presents accord with the congregation's beliefs" confuses the purpose for making a charitable gift with the authority to do so. We find analogous the issue raised before this Court in *Tubiolo*.

In *Tubiolo*, we recognized that "[m]embership in a church is a core ecclesiastical matter." 167 N.C. App. at 328, 605 S.E.2d at 164. However, we also recognized that an individual's membership in a church is a form of a property interest. *Id.* at 329, 605 S.E.2d at 164. Accordingly, it was proper for a court to address the "very narrow issue" of whether the plaintiffs' membership was terminated in accordance with the church's bylaws—whether bylaws had been adopted by the church, and whether those individuals who signed a letter revoking the plaintiffs' membership had the authority to do so. *Id.* at 329, 605 S.E.2d at 164-65 ("This inquiry can be made without resolving any ecclesiastical or doctrinal matters."). In the present case, the trial court is therefore not prohibited by the First Amendment from addressing Plaintiffs' first claim.

Plaintiffs' second claim alleges common law intentional infliction of emotional distress against McGlenn when McGlenn delivered to Wallace a letter stating that Wallace was no longer a member of Antioch. While a court cannot determine whether a church's grounds for membership are spiritually or doctrinally correct, *Harris v. Matthews*, 361 N.C. 265, 273, 643 S.E.2d 566, 571, applying a secular standard of law to secular tortious conduct by a church is not prohibited by the Constitution. *Privette*, 128 N.C. App. at 494, 495 S.E.2d at 398 (addressing the plaintiffs' claims of negligent supervision and retention against the defendant-church).

The elements of a claim for intentional infliction of emotional distress are "(1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress." *Guthrie v. Conroy*, 152 N.C. App. 15, 21, 567 S.E.2d 403, 408 (2002). Viewed in a light most favorable to Plaintiffs, the allegations in the Complaint of McGlenn's outrageous conduct in delivering the letter to Wallace with the intent to harm and causing severe emotional distress meets the requirements of pleading the common-law tort of intentional infliction of emotional distress. Whether Plaintiffs' claim has merit must be determined by the trial court, and it is a claim the trial court may resolve without delving into ecclesiastical matters. Accordingly, the trial court's granting of Defendants' Motion to Dismiss both of Plaintiffs' claims was error.

## B. Rule 11 Sanctions

**[2]** Plaintiffs additionally argue the trial court erred in granting Defendants' Motion for Rule 11 sanctions based on the factual and legal insufficiency of Plaintiffs' Complaint. We agree.

Rule 11 of the North Carolina Rules of Civil Procedure requires every pleading must be

> well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

N.C. Gen. Stat. § 1A-1, Rule 11 (2009). It follows that analysis of a claim for Rule 11 sanctions entails three parts: factual sufficiency, legal sufficiency, and no improper purpose of the pleading. *Id.* A finding of a violation of any one of these three requirements requires the court to impose sanctions. *Dodd v. Steele*, 114 N.C. App. 632, 635, 442 S.E.2d 363, 365, *disc. rev. denied*, 337 N.C. 691, 448 S.E.2d 521 (1994).

Our Supreme Court has explained that an appellate court's *de novo* review of a trial court's decision to impose Rule 11 sanctions requires us to determine whether (1) the trial court's findings of fact are supported by a sufficiency of evidence; (2) whether the findings of fact support the conclusions of law; and (3) whether the conclusions of law support the trial court's determination. *Turner v. Duke Univ.*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989). In the present case, the trial court imposed sanctions on the basis that Plaintiffs' complaint was factually and legally insufficient, but not that it was filed for an improper purpose.

When analyzing the factual sufficiency of a complaint, this Court must determine " '(1) whether the plaintiff undertook a reasonable inquiry into the facts and (2) whether the plaintiff, after reviewing the results of his inquiry, reasonably believed that his position was well grounded in fact.' " *Persis Nova Const., Inc. v. Edwards*, 195 N.C. App. 55, 61, 671 S.E.2d 23, 27 (2009) (quoting *Page v. Roscoe, LLC*, 128 N.C. App. 678, 681-82, 497 S.E.2d 422, 425 (1998)). However, because the trial court heard no evidence on Plaintiffs' claims and based its determination on the Complaint, it was required to accept the allegations therein as true and view them in the light most favorable to Plaintiffs. *Privette*, 128 N.C. App. at 493, 495 S.E.2d at 397.

In its 20 September 2010 Order, the trial court acknowledged that Plaintiffs allege Defendants "mismanaged and converted funds" of the church, but concluded Plaintiffs' claims involve "an internal governance dispute" that the court was prohibited from reaching. The Order makes no mention of Plaintiffs' claim for intentional infliction of emotional distress. Taking Plaintiffs' allegations as true, we cannot agree with the trial court that Plaintiffs' complaint is factually insufficient.

To be legally sufficient, Plaintiffs' claims for relief must be "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." N.C. Gen. Stat. § 1A-1, Rule 11; *Steele*, 114 N.C. App. at 635, 442 S.E.2d at 365. In our discussion above, we have concluded Plaintiffs' allegations are warranted by North Carolina statutes and common law. Accordingly, it was error for the trial court to grant Defendants' Motion for Rule 11 Sanctions for the alleged factual and legal insufficiency of Plaintiffs' Complaint.

## IV. Conclusion

In summary, we conclude that the trial court erred in granting Defendants' Motion to Dismiss and Motion for Rule 11 Sanctions. Plaintiffs' complaint is factually and legally sufficient, and the issues raised therein may be resolved by applying neutral principles of law. Accordingly, the trial court's Order is

Reversed.

Judges HUNTER, Robert C., and STROUD concur.