STROUD, Judge.
 

 *236
 
 Defendants appeal from the trial court's order denying their motion to dismiss for lack of subject matter jurisdiction. On appeal, defendants argue that the trial court lacks subject matter jurisdiction over plaintiffs' claims because exercising jurisdiction would require the court to
 
 *237
 
 address ecclesiastical matters in contravention of the First Amendment of the United States Constitutions and Article 1, Section 13 of the North Carolina Constitution. After review, we reverse the trial court's order because judicial involvement would impermissibly entangle the judicial system in ecclesiastical matters. We remand the case to the trial court with instructions for the court to enter an order granting defendants' motion to dismiss for lack of subject matter jurisdiction.
 

 I. Background
 

 The Holy Trinity Ethiopian Orthodox Tewahdo Church ("Holy Trinity") was founded in Charlotte, North Carolina in 1999. Holy Trinity is a non-profit organization and is governed by a parish council which is responsible for the day-today operation of church affairs. In 2007, Holy Trinity amended its constitution and bylaws. The amended bylaws provided:
 

 10.6 The term of the members of the Parish Council will be two years. However, in order to ensure continuity and momentum in leadership, for the first Parish Council elected after the adoption of these by-laws only, the five members of the Executive Committee, as elected by the full Parish Council will serve for three years. Following this "bridge" term; all other successive terms will be limited to two years.
 

 10.7 A Registered Member is eligible to serve two consecutive terms. In order to be eligible to serve again, a full term (two years) must elapse.
 

 *572
 
 Thereafter various disputes arose in Holy Trinity, including disagreements about the termination of a priest, and at a meeting held in March of 2014 it was determined that "the current parish council were granted at least a one year and six months extension" to address "the turmoil situations [ (sic) ] created by few individuals who support the terminated priest."
 

 In November of 2014, plaintiffs filed an amended complaint against Holy Trinity and defendants, the parish council members. Plaintiffs alleged that they are all registered members of Holy Trinity and requested a declaratory judgment that numerous violations of the bylaws had occurred including: "the 2012 election[,]" improperly extended terms of certain parish council members, the process of adopting "the purported March 16, 2014 amendment[,]" and improperly transferred real property. Furthermore, defendants had excluded plaintiffs as registered members of the church, though again, plaintiffs claim they are registered members of the church. On 1 December 2014, defendants filed a motion to
 
 *238
 
 dismiss for lack of subject matter jurisdiction. On 5 January 2015, the trial court denied defendants' motion. Defendants appeal.
 

 II. Interlocutory Appeal
 

 Defendants concede that this appeal is interlocutory; however, defendants argue that it "affects their substantial First Amendment rights and will cause injury if not corrected prior to final judgment." Our Supreme Court has recognized that
 

 [t]he United States Supreme Court has found First Amendment rights to be substantial, and has held the First Amendment prevents courts from becoming entangled in internal church governance concerning ecclesiastical matters. When First Amendment rights are asserted, this Court has allowed appeals from interlocutory orders. Accordingly, we reaffirm our stance that First Amendment rights are implicated when a party asserts that a civil court action cannot proceed without impermissibly entangling the court in ecclesiastical matters.
 

 ....
 

 ... The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.
 

 Harris v. Matthews
 
 ,
 
 361 N.C. 265
 
 , 269-70,
 
 643 S.E.2d 566
 
 , 569 (2007) (citations and quotation marks omitted). Therefore, we will consider defendants' appeal.
 

 III. Motion to Dismiss
 

 Defendants argue that the trial court's exercise of jurisdiction in this case will impermissibly entangle the court in ecclesiastical matters in contravention of the First Amendment of the United States Constitution and Article 1, Section 13 of the North Carolina Constitution. "We review Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction de novo[.]"
 
 Id.
 
 at 271,
 
 643 S.E.2d at 569
 
 .
 

 The First Amendment of the United States Constitution prohibits a civil court from becoming entangled in ecclesiastical matters. However, not every dispute involving church property implicates ecclesiastical matters. Thus, while circumscribing a court's authority to resolve
 
 *239
 
 internal church disputes, the First Amendment does not provide religious organizations absolute immunity from civil liability.
 

 As such, our Courts may resolve disputes through neutral principles of law, developed for use in all property disputes.
 
 The dispositive question is whether resolution of the legal claim requires the court to interpret or weigh church doctrine
 
 .
 

 Davis v. Williams
 
 , --- N.C.App. ----, ----,
 
 774 S.E.2d 889
 
 , 892 (2015) (emphasis added) (citation and quotation marks omitted);
 
 see also
 

 Harris v. Matthews
 
 ,
 
 361 N.C. 265
 
 , 271-72,
 
 643 S.E.2d 566
 
 , 570 (2007) ("First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice. Civil court intervention into church property disputes is proper only when relationships involving church property have been structured so as not to require the civil courts to resolve ecclesiastical questions. When a congregational church's internal property dispute cannot be resolved using
 
 *573
 
 neutral principles of law, the courts must intrude no further and must instead defer to the decisions by a majority of its members or by such other local organism as it may have instituted for the purpose of ecclesiastical government." (citations, quotation marks, and brackets omitted)).
 

 Plaintiffs contend that "[t]he only issue before this Court is whether the trial court has subject matter jurisdiction to decide whether the Church followed its own bylaws." Although plaintiffs seek to present this dispute as a simple procedural disagreement over the adoption of bylaws in accord with proper procedure, the substance of the complaint belies this claim. The amended complaint alleges that each plaintiff is "a registered member" of the church; defendants dispute their membership. Although defendants moved for dismissal without filing an answer, an affidavit filed by defendants alleges that "Plaintiffs have failed to comply with the requirements for Church membership." Although plaintiffs raise other claims regarding the governance of the church, even they implicitly concede their standing to challenge the defendants' actions depends upon their status as registered members.
 
 [1]
 

 While we realize plaintiffs' amended complaint supersedes the original complaint,
 
 see
 

 *240
 

 Hyder v. Dergance
 
 ,
 
 76 N.C.App. 317
 
 , 319,
 
 332 S.E.2d 713
 
 , 714 (1985) (noting the "general principle that an amended complaint has the effect of superseding the original complaint."), the background of this case in the record before us is still relevant to this jurisdictional inquiry, and in plaintiffs' original complaint they requested "a declaratory judgment pursuant to
 
 N.C. Gen. Stat. § 1
 
 - 253,
 
 et. seq.
 
 stating that they are all registered members of the Church, can participate in worship at the church, and that the purported attempt to ban them from the premises violates the Church's bylaws and is void." Plaintiffs' amended complaint omits this request and subsumes the membership issue in the following allegation:
 

 33. As registered members of the Church, Plaintiffs[ ] have a cognizable civic, contract, and property interest in the operation of the Church and whether the Parish Council has acted within the scope of its authority and followed the Church's bylaws.
 

 But even considering only the amended complaint, this case does not appear to be primarily a property dispute or a dispute regarding misappropriation of funds, as many of the cases arising out of church disputes are,
 
 see, e.g.,
 

 Davis,
 
 --- N.C.App. at ----,
 
 774 S.E.2d at 891
 
 (including allegations of "wrongfully converted church funds for personal use, and embezzled from the church");
 
 Johnson v. Antioch United Holy Church, Inc.
 
 ,
 
 214 N.C.App. 507
 
 , 508,
 
 714 S.E.2d 806
 
 , 809 (2011) (including allegations of "wasted ... property and ... transactions prohibited by the Internal Revenue Code"), but instead plaintiffs' allegations are focused upon the actual governance of the church and their right as members to participate fully in the church.
 
 [2]
 
 Plaintiffs' status as registered members and right as members in good standing to vote are thus central to this action.
 

 Our courts have defined an ecclesiastical matter as:
 

 one which concerns doctrine, creed, or form of worship of the church, or the adoption and enforcement within a religious association of needful laws and regulations for the government of membership, and the power of excluding from such associations those deemed unworthy of
 
 *241
 
 membership by the legally constituted authorities of the church; and all such matters are within the province
 
 *574
 
 of church courts and their decisions will be respected by civil tribunals.
 

 Membership in a church is a core ecclesiastical matter. The power to control church membership is ultimately the power to control the church. It is an area where the courts of this State should not become involved. This stricture applies regardless of whether the church is a congregational church, incorporated or unincorporated, or an hierarchical church.
 

 The prohibition on judicial cognizance of ecclesiastical disputes is founded upon both establishment and free exercise clause concerns. By adjudicating religious disputes, civil courts risk affecting associational conduct and thereby chilling the free exercise of religious beliefs. Moreover, by entering into a religious controversy and putting the enforcement power of the state behind a particular religious faction, a civil court risks establishing a religion.
 

 Tubiolo v. Abundant Life Church, Inc.
 
 ,
 
 167 N.C.App. 324
 
 , 327-28,
 
 605 S.E.2d 161
 
 , 163-64 (2004) (citations and quotation marks omitted).
 

 Plaintiffs rely primarily upon
 
 Johnson
 
 in arguing that this case does not require inquiry into ecclesiastical matters. But the dispute in
 
 Johnson
 
 related to "a number of violations of the North Carolina Nonprofit Corporation Act and intentional infliction of emotional distress[.]"
 
 214 N.C.App. at 508
 
 ,
 
 714 S.E.2d at 808
 
 . As we noted,
 
 Johnson
 
 arose in part, as many church cases do, out of a real property dispute.
 
 214 N.C.App. at 508
 
 ,
 
 714 S.E.2d at 809
 
 . In
 
 Johnson
 
 , this Court specifically noted that in that case "[w]hether Defendants' actions were authorized by the bylaws of the church in no way implicates an impermissible analysis by the court based on religious doctrine or practice."
 
 Id.
 
 at 511,
 
 714 S.E.2d at 810
 
 . The Court in
 
 Johnson
 
 ultimately determined that it could address "the very narrow" issues in that case based upon
 
 Tubiolo
 
 :
 

 In
 
 Tubiolo
 
 , we recognized that membership in a church is a core ecclesiastical matter. However, we also recognized that an individual's membership in a church is a form of a property interest. Accordingly, it was proper
 
 *242
 
 for a court to address the very narrow issue of whether the plaintiffs' membership was terminated in accordance with the church's bylaws-whether bylaws had been adopted by the church, and whether those individuals who signed a letter revoking the plaintiffs' membership had the authority to do so. In the present case, the trial court is therefore not prohibited by the First Amendment from addressing Plaintiffs' first claim.
 

 Johnson
 
 ,
 
 214 N.C.App. at 512
 
 ,
 
 714 S.E.2d at 811
 
 (citations, quotation marks, and brackets omitted).
 

 This case is both factually and legally different from
 
 Johnson
 
 .
 
 See
 

 id.
 

 ,
 
 214 N.C.App. 507
 
 ,
 
 714 S.E.2d 806
 
 . The issues before us would require interpretation of the bylaws which do impose doctrinal requirements. Even if a declaration of plaintiffs' status as registered members is not specifically the issue before us, in order to determine if plaintiffs even have standing to bring the other issues or to determine if the correct number of members voted for the challenged amendments, the trial court would need to address the contested membership status, which is governed by the bylaws:
 

 5.1 Membership
 

 Without limitation to age, any individual member of a household who believes that our Lord Jesus Christ is the Savior and has been baptized into the Orthodox Tewahdo Church will have the right to be registered as a member of Holy Trinity. Any such member who is 18 years old or older
 
 and meets the following criteria will be eligible to exercise an additional right to vote
 
 on Church matters requiring a vote:
 

 5.1.1 Unless extenuating circumstances dictate, frequently attends Church services and diligently works to promote the mission of HTEOTC;
 

 5.1.2 Contributes financially to support the services of the Church according to his/her means;
 

 5.1.3 Complies with these by-laws and related directives[.]
 

 (Emphasis added.)
 

 The bylaws also impose additional requirements upon members, including specific duties which include the following:
 

 *575
 

 *243
 
 6.2.1 Unless extenuating circumstances dictate, Registered Members are expected to fulfill the financial obligation they agreed to.
 

 6.2.2 Although all functions and roles within the Church are voluntary in nature, members are expected to show their support and participation and support of Church activities when requested.
 

 6.2.3 Each member will have the duty to accept these bylaws of the Church and to be bound by all provision contained herein.
 

 6.2.4 When on Church property, each member is strictly prohibited from initiating on [ (sic) ] taking part in any disruptive or divisive action or language that adversely affects the unity and cohesion of the Church's community.
 

 6.2.5 Although Registered Members have the right to offer their perspective and participate in discussions during general member meetings, they are required to control their language and mannerisms to ensure that it they are respectful and considerate of the other members present. Accordingly, all listening members should respect any perspective offered by a member and treat them with respect and free from any pressure or intimidation. Member discussions will not be counter to the by-laws of the Church.
 

 Even assuming for purposes of argument that plaintiffs are registered members, Article 5.1 imposes additional requirements even for registered members to have the right to vote "on Church matters requiring a vote" and these requirements raise ecclesiastical questions. Plaintiff requested a declaratory judgment determining that "the Parish Council did not comply with Article 17 of the Church's bylaws." Article 17, regarding elections, requires those who "participate in electing or to be elected" to "meet the eligibility criteria for Registered Member[s,]" which again requires consideration of various requirements of the bylaws, including whether the individual "diligently works to promote the mission of HTEOTC[.]" Plaintiffs also request the trial court to determine that defendants had not complied with Article 18 regarding meetings and Article 20 regarding amendments; again, both these articles include
 
 *244
 
 sections limiting participation to registered members. Plaintiffs also request the trial court to find violations of Article 7 regarding termination of membership and Article 19 regarding a transfer of property. Article 7 addresses whether a Registered Member has "engage[d] in misconduct or immoral behavior" and Article 19 allows for the transfer of property if it "provide[s] service to the growing membership and its needs." The courts cannot determine the "immoral behavior" of plaintiffs for purposes of the bylaws nor can the courts evaluate whether a particular transaction serves the needs of the membership of this church without involvement in ecclesiastical matters. In summary, plaintiffs' claims cannot be adjudicated in the judicial system as they raise questions which go far beyond the consideration of "neutral principles of law" and would "require[ ] the court to interpret or weigh church doctrine" in contravention of the First Amendment.
 
 Davis
 
 , --- N.C.App. at ----,
 
 774 S.E.2d at 892
 
 (2015).
 

 IV. Conclusion
 

 For the foregoing reasons, we reverse the trial court's denial of defendants' motion to dismiss.
 

 REVERSED.
 

 Judges DIETZ and TYSON concur.
 

 [1]
 

 Though standing was not the basis of the motion to dismiss, plaintiffs spend approximately two pages of their thirteen page brief to address that "as registered members, appellants [ (sic) ] have standing to maintain their suit." (Original in all caps.)
 

 [2]
 

 Plaintiffs did object to a real property transaction, but this transaction does not seem to be the primary focus of the complaint. The main focus of this complaint is that the proper percentage of the total registered members did not participate in the vote, but again, the correct number depends on the total number of registered members who are qualified to vote. Defendants do not count plaintiffs as registered members.