ZACHARY, Judge.
 

 *913
 

 *229
 
 Plaintiff James Mark McDaniel, Jr. appeals from the trial court's orders setting aside entry of default and granting defendants' Motion to Dismiss. Because plaintiff lacks standing, we affirm the trial court's order dismissing this action.
 

 Background
 

 McDaniel co-owned several businesses with Dr. C. Richard Epes, including Southeastern Eye Center, Inc. ("SEC") and several entities related thereto ("SEC Businesses"). According to McDaniel, "[a]s a part of that partnership, we had an agreement whereby we would each commit our wealth to make sure that the corporations continue to prosper."
 

 *230
 
 However, the SEC Businesses had fallen into a great deal of debt by 2014.
 

 Arthur Nivison and his family own several business entities ("Nivison Entities") that by early 2014 were in the midst of litigation concerning debt owed to them by the SEC Businesses. Defendants Byron L. Saintsing and the law firm Smith Debnam Narron Drake Saintsing & Myers, LLP represented the Nivison Entities in the litigation. Nivison Entities sought additional security for the Nivison loans, including a secured interest in the collection of Andrew Wyeth paintings that Dr. Epes owned, valued at over $20 million. McDaniel maintains that his business agreement with Dr. Epes "specifically included" the Andrew Wyeth paintings, whereby "Dr. Epes agreed to either borrow against or to sell paintings as necessary to protect our business[.]" According to McDaniel,
 

 Arthur Nivison described his desire to have a secured interest in the Andrew Wyeth art collection (which if such a secured interest were granted would make the art collection unavailable for loans or sale and which would violate the agreement between Dr. Epes and me). I wrote back to Arthur Nivison (with a copy to Byron Saintsing) that under no circumstances were any Andrew Wyeth paintings to be secured and whatever we worked out would have to be worked out some other way.
 

 McDaniel further contends that
 

 Defendant Saintsing's reaction to hearing the news that he could not have the Andrew Wyeth paintings as security for his clients was to personally prepare and file with the North Carolina Secretary of State a UCC-1 which gave Arthur Nivison a secured interest in the paintings-this was directly against my written instructions. At no time before the UCC-1 lien was filed with the North Carolina Secretary of State against the Andrew Wyeth paintings did Defendant Saintsing nor Defendant Smith Debnam Narron Drake Saintsing & Myers LLP nor anyone else obtain permission from Dr. Epes, from me or from anyone else to file a UCC-1, and therefore, the UCC-1 was legally unauthorized according to the UCC Rules, false and fraudulent and both defendants knew that said document was unauthorized false and fraudulent.
 

 The UCC-1 amendment was filed 10 April 2014.
 

 *231
 
 On 27 April 2015, Chief Justice Mark Martin of the North Carolina Supreme Court designated thirteen cases pending against McDaniel, Dr. Richard Epes, and varied SEC Businesses as exceptional cases, and assigned the cases to the Honorable Louis Bledsoe, III for hearing. Judge Bledsoe appointed a receiver to manage the assets of the various SEC Businesses in litigation. The Receiver demanded,
 
 inter alia
 
 , "payment of money, return of assets and setting aside of various transactions" by McDaniel and his wife "on the grounds of corporate mismanagement, conflict of interest, insider and self-interested transactions, fraudulent transfers, [and] failure to maintain adequate capitalization[.]" In short, McDaniel was accused of engaging in various unlawful actions with intent to defraud and hinder creditors of the SEC Businesses. In order to resolve these and other claims, McDaniel and his wife entered into a Settlement Agreement and Release with the Receiver in August 2015, pursuant to the terms of which the Receiver agreed to release all claims against the McDaniels in exchange for the McDaniels'
 

 *914
 
 relinquishment of any interest in virtually all of their non-exempt assets to the Receiver in satisfaction of the claims. The Settlement Agreement and Release provided for the transfer of all of the McDaniels' "tangible personal property including all artwork, furniture including all antiques, art work, collectibles, coins, collectible papers, historic documents, glassware, and any and all other tangible items of value," as well as "[a]ll judgments, rights, claims and causes of action including without limitation, any and all counterclaims or complaints currently pending in any ongoing action or proceeding and any and all unasserted or inchoate claims or causes of action" to the Receiver.
 

 Notwithstanding McDaniel's transfer of all "claims and causes of action" to the Receiver in settlement of various claims against him and his wife, McDaniel filed an obstruction of justice suit against defendants Saintsing and his firm on 10 April 2017 for their conduct relating to the April 2014 filing of the UCC-1 amendment. Default was entered as to McDaniel's claim against defendants on 19 June 2017. Defendants filed a Motion to Dismiss McDaniel's complaint for lack of subject-matter jurisdiction on 20 June 2017 and a Motion to Set Aside Entry of Default on 28 June 2017. The trial court granted defendants' Motion to Set Aside Entry of Default on 11 July 2017. The next day, the trial court granted defendants' Motion to Dismiss.
 

 On appeal, McDaniel argues that the trial court erred (1) when it set aside the entry of default, and (2) when it granted defendants' Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(3).
 

 *232
 

 Discussion
 

 We first address whether the trial court erred when it granted defendants' Motion to Dismiss for lack of subject-matter jurisdiction. Defendants maintain that the trial court properly granted their Motion to Dismiss because McDaniel does not have standing in the instant case and that therefore, "... the trial court lacks subject matter jurisdiction. ..."
 

 At the hearing on defendants' Motion to Dismiss, the trial court summarized defendants' standing argument as twofold: "One is [McDaniel] never owned the artwork and, therefore, any claim related to a false filing, he never had anyway as an initial matter[.] And, then, secondly, if he had a claim, it was transferred by virtue of either the transfer of the artwork or by virtue of the language of the settlement agreement." We first address whether McDaniel lacks standing by virtue of the terms of the Settlement Agreement and Release to which he was a party.
 

 Subject-matter jurisdiction "involves the authority of a court to adjudicate the type of controversy presented by the action before it."
 
 Haker-Volkening v. Haker
 
 ,
 
 143 N.C. App. 688
 
 , 693,
 
 547 S.E.2d 127
 
 , 130 (2001). "A court's lack of subject matter jurisdiction is not waivable and can be raised at any time, including on appeal."
 
 Banks v. Hunter
 
 , --- N.C. App. ----, ----,
 
 796 S.E.2d 361
 
 , 365 (2017) (citing
 
 Pulley v. Pulley
 
 ,
 
 255 N.C. 423
 
 , 429,
 
 121 S.E.2d 876
 
 , 880 (1961) ). "Whether a trial court has subject-matter jurisdiction is a question of law, reviewed
 
 de novo
 
 on appeal."
 
 McKoy v. McKoy
 
 ,
 
 202 N.C. App. 509
 
 , 511,
 
 689 S.E.2d 590
 
 , 592 (2010) (citation omitted).
 

 It is axiomatic that "[s]tanding is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction."
 
 Cook v. Union Cty. Zoning Bd. of Adjustment
 
 ,
 
 185 N.C. App. 582
 
 , 588,
 
 649 S.E.2d 458
 
 , 464 (2007) (citation and quotation marks omitted). Standing "refers to whether a party has a sufficient stake in an otherwise justiciable controversy so as to properly seek adjudication of the matter."
 
 Neuse River Found., Inc. v. Smithfield Foods, Inc.
 
 ,
 
 155 N.C. App. 110
 
 , 114,
 
 574 S.E.2d 48
 
 , 51 (2002) (citing
 
 Sierra Club v. Morton
 
 ,
 
 405 U.S. 727
 
 , 731-32,
 
 92 S.Ct. 1361
 
 ,
 
 31 L.Ed. 2d 636
 
 , 641 (1972) ). Three elements must be satisfied in order for a plaintiff to establish standing:
 

 (1) 'injury in fact'-an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
 

 *915
 

 *233
 

 Neuse River Found.
 
 ,
 
 Inc.,
 

 155 N.C. App. at 114
 
 ,
 
 574 S.E.2d at 52
 
 (quoting
 
 Lujan v. Defenders of Wildlife
 
 ,
 
 504 U.S. 555
 
 , 560-61,
 
 112 S.Ct. 2130
 
 , 2136,
 
 119 L.Ed. 2d 351
 
 , 364 (1992) ).
 

 In the instant case, as a part of his Settlement Agreement and Release with the Receiver, McDaniel agreed to "transfer and assign all of [his] assets, both disclosed and undisclosed, known and unknown, tangible and intangible," including any and all "judgments, rights, claims and causes of action including, without limitation, any and all counterclaims or complaints currently pending in any ongoing action or proceeding and any and all unasserted or inchoate claims or causes of action" to the Receiver. Thus, even assuming,
 
 arguendo
 
 , that McDaniel had a colorable claim for obstruction of justice against defendants, the claim would have existed at the time of execution of the Settlement Agreement and Release, pursuant to the terms of which the right to assert that claim was conveyed to the Receiver. Accordingly, in that McDaniel's potential legal claim is held by the Receiver, McDaniel does not have "a sufficient stake" in his obstruction of justice claim to establish standing in the instant matter.
 
 Neuse River Found., Inc.
 
 ,
 
 155 N.C. App. at 114
 
 ,
 
 574 S.E.2d at 51
 
 .
 

 McDaniel also argues that the Settlement Agreement and Release has no bearing on his claim against defendants because defendants were neither parties to, nor beneficiaries of that contract. While it is true that defendants were neither parties to, nor beneficiaries of the Settlement Agreement and Release, this is irrelevant. The Settlement Agreement and Release does not affect defendants' ability to defend against the obstruction of justice claim, but rather affects McDaniel's ability to assert that claim from the outset in that the right to assert that claim became vested in the Receiver by operation of the Settlement Agreement and Release.
 

 Accordingly, we conclude that the trial court properly granted defendants' Motion to Dismiss because McDaniel lacks standing to assert the obstruction of justice claim at bar, as any such right to do so would belong not to McDaniel, but to the Receiver. Because there is no subject-matter jurisdiction in the instant case, we need not review the trial court's order setting aside entry of default.
 

 Conclusion
 

 For the reasons contained herein, the trial court's orders granting Defendants' Motion to Dismiss and granting Defendants' Motion to Set Aside Entry of Default are
 

 AFFIRMED.
 

 Judges ELMORE and HUNTER, JR. concur.