IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-528

 No. COA20-800

 Filed 5 October 2021

 Mecklenburg County, No. 19-CvS-18345

 NATION FORD BAPTIST CHURCH INCORPORATED d/b/a Nations Ford
 Community Church, Plaintiff,

 v.

 PHILLIP RJ DAVIS, Defendant/Third-Party Plaintiff,

 v.

 JOSEPH DIXON, CHARLES ELLIOT and DOUGLAS WILLIE, Third-Party
 Defendants.

 Appeal by Plaintiff/Third-Party Defendant from order entered 22 July 2020 by

 Judge Carla N. Archie in Mecklenburg County Superior Court. Heard in the Court

 of Appeals 10 August 2021.

 Knox, Brotherton, Knox & Godfrey, by Lisa G. Godfrey, H. Edward Knox, and
 J. Gray Brotherton, for the Plaintiff- and Third-Party Defendants-Appellants.

 Nexsen Pruet, PLLC, by James C. Smith and Nicholas T. Pappayliou, for the
 Defendant/Third-Party Plaintiff-Appellee.

 GRIFFIN, Judge.

¶1 Plaintiff Nation Ford Baptist Church Incorporated (the “Church”) and Third-

 Party Defendants Joseph Dixon, Charles Elliot, and Douglas Willie (together, the

 “Elders”) appeal the trial court’s order denying their motion to dismiss and granting
 NATION FORD V. DAVIS

 2021-NCCOA-528

 Opinion of the Court

 Defendant and Third-Party Plaintiff Phillip R.J. Davis’s (“Davis”) motion to amend

 his counterclaim and third-party complaint. The Church and the Elders argue the

 trial court erred in denying their motion, granting Davis’s motion, and concluding

 Davis had standing to bring the claims asserted in his counterclaim and third-party

 complaint.

¶2 The primary issue presented in this appeal is whether the resolution of Davis’s

 claims would require our Courts to interpret religious matters in violation of the

 ecclesiastical abstention doctrine which stems from the First Amendment to the

 United States Constitution. We hold that there is no guarantee that our Courts will

 be forced to weigh ecclesiastical matters at this stage of the proceedings. We affirm

 the decision of the trial court.

 I. Factual and Procedural History

¶3 The Church was incorporated as a North Carolina nonprofit corporation in

 1988. At the Church’s time of incorporation, the Elders acted as the Board of

 Directors for the Church. On 31 March 2016, the Elders hired Davis to serve as

 Senior Pastor for the Church. Davis was employed on an “‘at-will’ basis.” The

 employment agreement letter signed by Davis on 31 March 2016 set out his terms of

 employment, in pertinent part, as follows:

 An “at-will” employment relationship has no specific
 duration. This means that an employee can resign their
 employment at any time, with or without reason or
 NATION FORD V. DAVIS

 2021-NCCOA-528

 Opinion of the Court

 advance notice. The [C]hurch has the right to terminate
 employment at any time, with or without reason or advance
 notice as long as there is no violation of applicable state or
 federal law.

 (Emphasis added).

¶4 The Record in this case contains two different sets of bylaws, and the parties

 disagree which bylaws governed the Church’s operations during the time relevant to

 this case. The Church adopted a set of bylaws (“the First Bylaws”) on 8 January 1997.

 On or about April 2008, the Church applied for a bank loan, and incorporated another

 set of bylaws (“the Second Bylaws”) as part of its loan application.

¶5 Effective 17 June 2019, the Elders unanimously decided to terminate Davis’s

 employment at the Church. Despite his termination, Davis ignored the instructions

 of the Church and continued to conduct religious activities at the Church.

¶6 The Church initiated this action on 17 September 2019 seeking, inter alia, a

 preliminary injunction to prohibit Davis from accessing the Church. In response,

 Davis filed an answer, counterclaim, third-party complaint, and motion for injunctive

 relief on 24 October 2019. Davis’s claims are centered around an employment dispute

 for which the remedy is dependent upon determining which bylaws governed the

 Church’s actions. An order granting the Church’s motion for a preliminary injunction

 was entered on 30 October 2019.

¶7 On 22 April 2020, the Church and the Elders filed a motion to dismiss Davis’s
 NATION FORD V. DAVIS

 2021-NCCOA-528

 Opinion of the Court

 counterclaim and third-party complaint. Davis moved to amend his answer,

 counterclaim, and third-party complaint on 6 May 2020. The court entered an order

 (“the Order”) granting Davis’s motion to amend and denying the Church and the

 Elders’ motion to dismiss on 22 July 2020. According to the Order,

 The [c]ourt finds and concludes that (i) this [c]ourt has
 subject matter jurisdiction over the matters and claims
 asserted in [Davis]’s Counterclaim and Third-Party
 Complaint, (ii) [Davis] has standing to bring the claims
 asserted in his Counterclaim and Third-Party Complaint,
 and (ii) [Davis]’s Motion to Amend should be granted.

 The Church and the Elders timely appeal.

 II. Analysis

¶8 The Church and the Elders raise three issues on appeal. First, they contend

 the trial court erred in concluding that it has subject matter jurisdiction over the

 matters asserted in Davis’s amended counterclaim and third-party complaint.

 Second, they argue the trial court erred in concluding that Davis has standing to

 bring the claims asserted in his amended counterclaim and third-party complaint.

 Third, they assert the trial court erred in granting Davis’s motion to amend the

 counterclaim and third-party complaint. We address each issue in turn.

 A. Interlocutory Jurisdiction

¶9 We acknowledge that this appeal is interlocutory. An interlocutory order is

 “made during the pendency of an action and does not dispose of the case but requires
 NATION FORD V. DAVIS

 2021-NCCOA-528

 Opinion of the Court

 further action by the trial court in order to finally determine the rights of all the

 parties involved in the controversy.” Flitt v. Flitt, 149 N.C. App. 475, 477, 561 S.E.2d

 511, 513 (2002) (citation omitted). There is generally no right to immediately appeal

 from an interlocutory order. Id. Immediate appeal of an interlocutory order is,

 however, appropriate when “the challenged order affects a substantial right that may

 be lost without immediate review.” McConnell v. McConnell, 151 N.C. App. 622, 624,

 566 S.E.2d 801, 803 (2002) (citation omitted).

¶ 10 A “substantial right” is “a right materially affecting those interests which a

 man is entitled to have preserved and protected by law: a material right.” Oestreicher

 v. Stores, 290 N.C. 118, 130, 225 S.E.2d 797, 805 (1976) (citation and quotation marks

 omitted). The appellant has the burden of establishing that a substantial right will

 be affected unless they are allowed to immediately appeal from an interlocutory

 order. Jeffreys v. Raleigh Oaks Joint Venture, 115 N.C. App. 377, 379, 444 S.E.2d

 252, 253 (1994).

¶ 11 The trial court’s Order denying the Church and Elders’ motion to dismiss and

 granting Davis’s motion to amend is an interlocutory order. It was made during the

 pendency of the action and it does not dispose of the case. However, the Church and

 the Elders argue that their motion to dismiss should have been granted because

 resolution of Davis’s claims would require the trial court to impermissibly entangle

 itself in ecclesiastical matters in violation of the First Amendment of the United
 NATION FORD V. DAVIS

 2021-NCCOA-528

 Opinion of the Court

 States Constitution. “First Amendment rights are substantial and . . . are implicated

 when a party asserts that a civil court action cannot proceed without impermissibly

 entangling the court in ecclesiastical matters.” Harris v. Matthews, 361 N.C. 265,

 270, 643 S.E.2d 566, 569 (2007). “When First Amendment rights are asserted, this

 Court has allowed appeals from interlocutory orders.” Id. (citation omitted).

¶ 12 The Church and the Elders have asserted a violation of First Amendment

 rights. Their appeal is properly before this Court.

 B. Motion to Dismiss for Ecclesiastical Abstention

¶ 13 The Church and the Elders contend the trial court erred in concluding that it

 had subject matter jurisdiction over the claims asserted in Davis’s amended

 counterclaim and third-party complaint because the court would be forced to

 interpret and resolve ecclesiastical questions to resolve the claims.

¶ 14 The standard of review for a trial court’s decision to deny a motion to dismiss

 for lack of subject matter jurisdiction under Rule 12(b)(1) is de novo. Tubiolo v.

 Abundant Life Church, Inc., 167 N.C. App. 324, 327, 605 S.E.2d 161, 163 (2004)

 (citation omitted). When ruling on or reviewing a Rule 12(b)(1) motion to dismiss,

 our courts may “consider and weigh matters outside of the pleadings.” Id. (citation

 omitted). Upon review of a motion to dismiss for lack of subject matter jurisdiction,

 the trial court must accept the allegations in the complaint as true and construe them

 in the light most favorable to the non-moving party. Johnson v. Antioch United Holy
 NATION FORD V. DAVIS

 2021-NCCOA-528

 Opinion of the Court

 Church, Inc., 214 N.C. App. 507, 510, 714 S.E.2d 806, 809 (2011) (citations omitted).

¶ 15 The trial court properly determined it had subject matter jurisdiction over

 Davis’s claims. “The First Amendment of the United States Constitution prohibits a

 civil court from becoming entangled in ecclesiastical matters.” Id. at 510, 714 S.E.2d

 at 810 (citing Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem’l

 Presbyterian Church, 393 U.S. 440, 449 (1969)). “An ecclesiastical matter is one

 which concerns doctrine, creed, or form of worship of the church, or the adoption and

 enforcement within a religious association of needful laws and regulations for the

 government of membership.” W. Conf. of Original Free Will Baptists of N.C. v. Miles,

 259 N.C. 1, 10–11, 129 S.E.2d 600, 606 (1963) (citations omitted).

¶ 16 However, civil courts do not violate the First Amendment “merely by opening

 their doors to disputes involving church property.” Presbyterian Church, 393 U.S. at

 449. “And there are neutral principles of law, developed for use in all property

 disputes, which can be applied without ‘establishing’ churches to which property is

 awarded.” Id. “The First Amendment therefore commands civil courts to decide

 church property disputes without resolving underlying controversies over religious

 doctrine.” Serbian E. Orthodox Diocese for U.S. of A. and Canada v. Milivojevich, 426

 U.S. 696, 710 (1976) (citation omitted). “This principle applies with equal force to

 church disputes over church polity and church administration.” Id. “The dispositive

 question is whether resolution of the legal claim requires the court to interpret or
 NATION FORD V. DAVIS

 2021-NCCOA-528

 Opinion of the Court

 weigh church doctrine.” Smith v. Privette, 128 N.C. App. 490, 494, 495 SE.2d 396,

 398 (1998). “If not, the First Amendment is not implicated and neutral principles of

 law are properly applied to adjudicate the claim.” Id (citation omitted). “When a

 party brings a proper complaint, ‘[w]here civil, contract[][,] or property rights are

 involved, the courts will inquire as to whether the church tribunal acted within the

 scope of its authority and observed its own organic forms and rules.’” Harris v.

 Matthews, 361 N.C. 265, 274–75, 643 S.E.2d 566, 572 (2007) (quoting Atkins v.

 Walker, 284 N.C. 306, 320, 200 S.E.2d 641, 650 (1973)).

¶ 17 Davis’s claims request the following:

 (I) Declaratory judgment against the Church and the
 Elders, declaring that: (i) Davis is the “Bishop” and “Senior
 Pastor” of the Church; (ii) Davis was not an “at-will”
 employee of the Church; (iii) the Elders’ attempt to
 terminate Davis’s employment with the Church was
 unauthorized by the then-controlling Second Bylaws; and
 (iv) Davis is entitled to recover back-pay and benefits
 earned since his purported termination;

 (II) Preliminary and permanent injunction allowing Davis
 to resume employment with the Church, earning full
 compensation and benefits;

 (III) Money damages from the Elders for breach of fiduciary
 obligations owed to Davis and to the Church;

 (IV) Money damages from the Elders for wrongful
 interference with Davis’s employment relationship with
 the Church;

 (V) Rights (i) to inspect the Church’s financial records, (ii)
 NATION FORD V. DAVIS

 2021-NCCOA-528

 Opinion of the Court

 to receive an accounting from the Elders and the Church of
 Church funds or assets the Elders misappropriated, and
 (iii) to impose a constructive trust upon the Elders’ assets
 in an amount equal to any Church funds or assets found to
 have been misappropriated; and

 (VI) Money damages from the Elders for civil conspiracy to
 remove Davis from employment with the Church and to
 seize complete control of the Church’s operations.

¶ 18 As Davis asserts, “[t]his is an employment dispute.” The core tenet upon which

 all of Davis’s claims depend is the determination of which bylaws governed the

 Church at the relevant time. Davis was an employee of the Church and now raises

 disputes regarding the Church’s bylaws. His claims do not fall under the protections

 of ecclesiastical matters within the First Amendment.

¶ 19 Resolving Davis’s claims requires a two-part determination: First, which

 bylaws were the governing authority at the relevant time, and whether Davis’s

 termination was in accordance with the proper bylaws? Second, whether the Elders

 properly determined that Davis was unfit to serve as Senior Pastor of the Church?

¶ 20 The first determination may be made by applying neutral principles of law

 without engaging in ecclesiastical matters. Smith, 128 N.C. App. at 494, 495 SE.2d

 at 398. The trial court must first determine which set of bylaws controlled at the

 relevant time, based solely on contract and business law. The court will then be able

 to assess whether the Church’s procedure for firing Davis complied with the

 requirements of the controlling bylaws. The court may determine that the Church’s
 NATION FORD V. DAVIS

 2021-NCCOA-528

 Opinion of the Court

 method of terminating Davis did not comply with the requirements of the controlling

 bylaws, making Davis’s termination void. In this instance, this dispute would be

 resolved without the necessity of answering the second question—whether Davis was

 unfit to serve—and engaging with ecclesiastical matters.

¶ 21 If the court determines that the Church’s method of terminating Davis did

 comply with the requirements of the controlling bylaws, then our Courts would be

 required to assess whether the Church, through its Elders, properly determined that

 Davis was unfit to serve as Senior Pastor. That determination cannot be made

 applying only neutral principles of law. Answering this second question may require

 an impermissible engagement with ecclesiastical matters, but there is no guarantee

 at this stage of the proceedings that our courts will be forced to answer this second

 question.

¶ 22 The first determination required in the present case is analogous to Tubiolo v.

 Abundant Life Church, Inc. The plaintiffs in Tubiolo brought claims against the

 defendant church for wrongful termination, arguing that the persons who sought

 termination of the plaintiffs lacked the requisite authority to do so. Tubiolo, 167 N.C.

 App. at 326, 605 S.E.2d at 163. The Court in Tubiolo was tasked with determining

 what bylaws governed the actions of the defendant church, and whether the actions

 taken by the defendant church were in accordance with the appropriate bylaws. Id.

 at 329, 605 S.E.2d at 164. The Tubiolo Court noted “the courts do have jurisdiction
 NATION FORD V. DAVIS

 2021-NCCOA-528

 Opinion of the Court

 over the very narrow issue of whether the bylaws were properly adopted by the

 defendant [church].” Id. The Tubiolo Court then held, as this Court has previously

 acknowledged, that it is

 proper for a court to address the “very narrow issue” of
 whether the plaintiffs’ membership was terminated in
 accordance with the church’s bylaws—whether bylaws had
 been adopted by the church, and whether those individuals
 who signed a letter revoking the plaintiffs’ membership
 had the authority to do so.

 Johnson, 214 N.C. App. at 512, 714 S.E.2d at 811 (discussing the holding of Tubiolo,

 167 N.C. App. at 329, 605 S.E.2d at 164–65). The present case requires determining

 which bylaws were in effect, whether new bylaws had been adopted by the Church,

 whether the Elders had the authority to terminate Davis, and whether the

 termination was done in accordance with the proper bylaws. “This inquiry can be

 made without resolving any ecclesiastical or doctrinal matters.” Tubiolo, 167 N.C.

 App. at 329, 605 S.E.2d at 164–65. Our courts have jurisdiction over each of these

 determinations.

 C. Standing

¶ 23 The Church and the Elders argue that Davis does not have standing to bring

 his claims because they are derivative and brought on behalf of the Church. We

 disagree.

¶ 24 The Church and the Elders specifically argue that Davis does not have
 NATION FORD V. DAVIS

 2021-NCCOA-528

 Opinion of the Court

 standing to bring a derivative suit on behalf of the Church for his first, second, third,

 and fifth claims. N.C. Gen. Stat. § 55A-7-40(a) outlines derivative actions, providing:

 An action may be brought in a superior court of this State,
 which shall have exclusive original jurisdiction over
 actions brought hereunder, in the right of any domestic or
 foreign corporation by any member or director, provided
 that, in the case of an action by a member, the plaintiff or
 plaintiffs shall allege, and it shall appear, that each
 plaintiff-member was a member at the time of the
 transaction of which he complains.

 N.C. Gen. Stat. § 55A-7-40(a) (2019).

¶ 25 A majority of Davis’s first, second, third, and fifth claims allege injuries

 incurred in his individual capacity, and not on behalf of the Church. However, a

 portion of Davis’s third claim appears to request money damages from the Elders for

 breach of their fiduciary obligations owed to the Church itself. Seeking remedy on

 behalf of the Church for harm done to the Church would be a derivative action. The

 Church and the Elders argue that Davis lacks standing to bring a derivative action

 as a member of the Church because the First Bylaws explicitly state that the Church

 has no members. A determination of which bylaws were the proper governing

 authority of the Church at the relevant time is necessary to the determination of

 whether Davis has standing to bring the derivative action in his third claim.
 NATION FORD V. DAVIS

 2021-NCCOA-528

 Opinion of the Court

¶ 26 The remainder of Davis’s claims are brought in an individual capacity and are

 not derivative on behalf of the Church. A plaintiff must show the following three

 elements in order to establish individual standing:

 (1) ‘injury in fact’—an invasion of a legally protected
 interest that is (a) concrete and particularized and (b)
 actual or imminent, not conjectural or hypothetical; (2) the
 injury is fairly traceable to the challenged action of the
 defendant; and (3) it is likely, as opposed to merely
 speculative, that the injury will be redressed by a favorable
 decision.

 McDaniel v. Saintsing, 260 N.C. App. 229, 232–33, 817 S.E.2d 912, 914–15 (2018)

 (citation omitted). The alleged wrongful termination of Davis is an “injury in fact”

 that satisfies the first element. Davis was terminated by the actions of the Church

 and the Elders. If the court finds in favor of Davis, the injury will be sufficiently

 redressed.

¶ 27 The trial court did not err in determining that Davis had standing to bring the

 claims asserted in his amended counterclaim and third-party complaint at this stage

 of the proceedings.

 D. Motion to Amend

¶ 28 The Church and the Elders assert the trial court erred in granting Davis’s

 motion to amend the counterclaim and third-party complaint under Rule 15 of the

 North Carolina Rules of Civil Procedure. We review a trial court’s decision to grant

 a motion to amend the pleadings for an abuse of discretion. Carter v. Rockingham
 NATION FORD V. DAVIS

 2021-NCCOA-528

 Opinion of the Court

 Cnty. Bd. Of Educ., 158 N.C. App. 687, 690, 582 S.E.2d 69, 72 (2003); Mabrey v.

 Smith, 144 N.C. App. 119, 121, 548 S.E.2d 183, 185–86 (2001) (“A motion to amend

 the pleadings is addressed to the sound discretion of the trial court.”). “[A] trial judge

 abuses his discretion when he refuses to allow an amendment unless justifying

 reasoning is shown.” Taylor v. Triangle Porsche–Audi, Inc., 27 N.C. App. 711, 714,

 220 S.E.2d 806, 809 (1975) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

 “Generally, Rule 15 is construed liberally to allow amendments where the opposing

 party will not be materially prejudiced.” Delta Envtl. Consultants of N.C., Inc. v.

 Wysong & Miles Co., 132 N.C. App. 160, 165, 510 S.E.2d 690, 694 (1999) (citation

 omitted).

¶ 29 The Church has not shown reason justifying a denial of Davis’s motion to

 amend or any materially unfair prejudice as a result of the trial court’s decision to

 grant Davis’s motion to amend. The trial court did not abuse its discretion by

 granting Davis’s motion to amend the counterclaim and third-party complaint.

 III. Conclusion

¶ 30 We hold the trial court did not err in determining it had subject matter

 jurisdiction over Davis’s counterclaims and third-party complaint at this stage of the

 proceedings. The Church’s motion to dismiss for lack of subject matter jurisdiction

 was properly denied. The trial court did not err in determining Davis had standing

 to bring the counterclaims and third-party complaint. We hold there was no abuse of
 NATION FORD V. DAVIS

 2021-NCCOA-528

 Opinion of the Court

discretion in the trial court’s decision to grant Davis’s motion to amend the

counterclaim and third-party complaint. The Order of the trial court is affirmed.

 AFFIRMED.

 Judge ARROWOOD concurs.

 Judge MURPHY concurs in part and dissents in part by separate opinion.
 No. COA20-800 – Nation Ford v. Davis

 MURPHY, Judge, concurring in part and dissenting in part.

¶ 31 While I concur with the Majority’s analysis regarding our jurisdiction over this

 interlocutory appeal, supra at ¶¶ 9-12, I respectfully dissent from its conclusion that

 we have subject matter jurisdiction over this appeal. Supra at ¶¶ 15, 18. I would

 reverse the trial court’s order denying the motion to dismiss for lack of subject matter

 jurisdiction, which would render the issue regarding Davis’s standing moot. I would

 also hold the trial court lacked subject matter jurisdiction over the complaint,

 counterclaim, and amended counterclaim and remand for the trial court to dismiss

 the action with prejudice.1

 ANALYSIS

 A. Complete Entanglement of the Original Counterclaim

¶ 32 “Civil court intervention into church property disputes is proper only when

 ‘relationships involving church property [have been structured] so as not to require

 the civil courts to resolve ecclesiastical questions.’” Harris v. Matthews, 361 N.C. 265,

 271, 643 S.E.2d 566, 570 (2007) (emphases added) (marks in original) (quoting

 Presbyterian Church in the U.S. v. Mary Elizabeth Blue Hull Mem’l Presbyterian

 Church, 393 U.S. 440, 449, 21 L. Ed. 2d 658, 665 (1969)); Western Conference of

 Original Free Will Baptists of N.C. v. Creech, 256 N.C. 128, 140, 123 S.E.2d 619, 627

 1 For ease of reading, “counterclaim” and “original counterclaim” refer to both the

 counterclaim and third-party complaint filed 24 October 2019. “Amended counterclaim”
 refers to the amended counterclaim and third-party complaint filed 30 July 2020.
 NATION FORD V. DAVIS

 2021-NCCOA-528

 MURPHY, J., concurring in part and dissenting in part.

 (1962) (marks omitted) (“The legal or temporal tribunals of the State have no

 jurisdiction over, and no concern with, purely ecclesiastical questions and

 controversies but the courts do have jurisdiction, as to civil, contract and property

 rights which are involved in, or arise from, a church controversy.”). Our Supreme

 Court has defined an ecclesiastical matter as

 one which concerns doctrine, creed, or form of worship of
 the church, or the adoption and enforcement within a
 religious association of needful laws and regulations for the
 government of membership, and the power of excluding
 from such associations those deemed unworthy of
 membership by the legally constituted authorities of the
 church; and all such matters are within the province of
 church courts and their decisions will be respected by civil
 tribunals.

 Eastern Conference of Original Free Will Baptists of N.C. v. Piner, 267 N.C. 74, 77,

 147 S.E.2d 581, 583 (1966) (quoting Western Conference of Original Free Will Baptists

 of N.C. v. Miles, 259 N.C. 1, 10-11, 129 S.E.2d 600, 606 (1963)), overruled in part by

 Atkins v. Walker, 284 N.C. 306, 200 S.E.2d 641 (1973). “When a congregational

 church’s internal property dispute cannot be resolved using neutral principles of law,

 the courts must intrude no further[.]” Harris, 361 N.C. at 271-72, 643 S.E.2d at 570.

 Such judicial intrusion would constitute “impermissibl[e] entangle[ment] in the

 dispute.” Id. at 273, 643 S.E.2d at 571.

 1. “Spiritual Leader”

¶ 33 Davis’s original counterclaim repeatedly requested judicial recognition that he
 NATION FORD V. DAVIS

 2021-NCCOA-528

 MURPHY, J., concurring in part and dissenting in part.

 is “the Bishop, Senior Pastor and spiritual leader of the Church.” (Emphasis added).

 Davis specifically claimed he “is entitled to judgment declaring that [he] is the Bishop,

 Senior Pastor and spiritual leader of the Church[.]” (Emphasis added). The trial

 court stated it had subject matter jurisdiction over the original counterclaim and

 allowed Davis’s motion to amend. Despite stating in his motion to amend that the

 purpose was “to amend the factual allegations of the [original counterclaim][,] . . . add

 a claim for back pay and benefits[,] . . . and . . . add a claim for civil conspiracy[,]”

 Davis’s amended counterclaim also removed the “spiritual leader” language

 throughout. The amended counterclaim included a request for a “judgment declaring

 that [Davis] is the Bishop and Senior Pastor of the Church.” Davis’s requests for

 recognition as the “Bishop” and “Senior Pastor” throughout the amended

 counterclaim included that language, sans the additional term “spiritual leader.” The

 removal of the “spiritual leader” language did not fit the stated purpose for amending

 the counterclaim and suggests an attempt to avoid the prohibition against reviewing

 purely ecclesiastical issues. Further, the removal of “spiritual leader” underscores

 the religious nature of the “Bishop” and “Senior Pastor” terms, as well as the

 similarity and connectedness of all three terms. The original counterclaim required

 impermissible entanglement in ecclesiastical matters and should have been

 dismissed for lack of subject matter jurisdiction.

¶ 34 Davis’s request for recognition as the “spiritual leader” of the Church was an
 NATION FORD V. DAVIS

 2021-NCCOA-528

 MURPHY, J., concurring in part and dissenting in part.

 explicit request for judicial review of his role within the Church. Davis’s request

 would require

 an examination of the church’s view of the role of the
 pastor, staff, and church leaders[.] . . . Because a church’s
 religious doctrine and practice affect its understanding of
 each of these concepts, seeking a court’s review . . . is no
 different than asking a court to determine whether a
 particular church’s grounds for membership are spiritually
 or doctrinally correct[.] . . . None of these issues can be
 addressed using neutral principles of law.”

 Id. at 273, 643 S.E.2d at 571.

 2. Bylaws–“Special Meeting” and “Congregation”

¶ 35 Even assuming, arguendo, that a later set of bylaws controls the purported

 termination of his role as Bishop, Pastor, and spiritual leader of the Church, as Davis

 claimed, such bylaws would require a special meeting with a specific percentage of

 congregants to vote for his termination. According to both his original counterclaim

 and amended counterclaim, “the New Bylaws expressly provide[] that the Bishop of

 the Church can be dismissed only by a 75% vote of the congregation attending a

 Special General Meeting called for that purpose. No Special General Meeting of the

 congregation was convened[.]” What constitutes such a special meeting to dismiss

 Davis from that role, as well as the definition of congregants or members of the

 Church, are ecclesiastical matters, which courts may not analyze and where we may

 not exercise the authority of the State. See Azige v. Holy Trinity Ethiopian Orthodox
 NATION FORD V. DAVIS

 2021-NCCOA-528

 MURPHY, J., concurring in part and dissenting in part.

Tewahdo Church, 249 N.C. App. 236, 241, 790 S.E.2d 570, 574 (2016) (“Membership

in a church is a core ecclesiastical matter. The power to control church membership

is ultimately the power to control the church. It is an area where the courts of this

State should not become involved. This stricture applies regardless of whether the

church is a congregational church, incorporated or unincorporated, or an hierarchical

church.”), disc. rev. denied, 369 N.C. 532, 797 S.E.2d 290 (2017); Emory v. Jackson

Chapel First Missionary Baptist Church, 165 N.C. App. 489, 493, 598 S.E.2d 667, 671

(2004) (“As the trial court would be required to delve into ‘ecclesiastical matters’

regarding how the church interprets [bylaw requirements such as] types of meetings,

the trial court [lacked] subject matter jurisdiction.”).

 We are prohibited from becoming entangled in
 ecclesiastical matters and have no jurisdiction over
 disputes which require an examination of religious
 doctrine and practice in order to resolve the matters at
 issue. . . . Only when an issue to be determined in
 connection with a party’s claim is a purely secular one, then
 neutral principles of law govern the inquiry and subject
 matter jurisdiction exists in the trial court over the claim.
 . . . Therefore, because a church’s religious doctrine and
 practice affect its understanding of each of the concepts at
 issue, [the trial court’s involvement] is like asking a court
 to determine whether a particular church’s grounds for
 membership are spiritually or doctrinally correct or
 whether a church’s charitable pursuits accord with the
 congregation’s beliefs, which are barred.

Lippard v. Holleman, 271 N.C. App. 401, 408, 410-11, 844 S.E.2d 591, 598-99, 600

(citations and marks omitted), disc. rev. denied, appeal dismissed, 375 N.C. 492, 847
 NATION FORD V. DAVIS

 2021-NCCOA-528

 MURPHY, J., concurring in part and dissenting in part.

 S.E.2d 882 (2020), cert. denied, 594 U.S. __, 2021 WL 2637859 (2021).

¶ 36 The entirety of the original counterclaim should have been dismissed for lack

 of subject matter jurisdiction, as it required the trial court to delve into ecclesiastical

 matters. On appeal, judicial analysis of Davis’s original counterclaim requires

 impermissible entanglement in this dispute, as no neutral principles of law can be

 applied to determine whether Davis is the spiritual leader of the Church, whether a

 special meeting was held to dismiss him from that role, and who constituted a

 congregant or member of the Church. The Majority’s approach jeopardizes the

 Church’s “First Amendment values,” as this “church property litigation . . . turn[s]

 on the resolution by civil courts of controversies over religious doctrine and practice.”

 Harris, 361 N.C. at 271, 643 S.E.2d at 570 (quoting Presbyterian, 393 U.S. at 449, 21

 L. Ed. 2d at 665). I would hold the trial court lacked subject matter jurisdiction over

 Davis’s original counterclaim; we should reverse the order for lack of subject matter

 jurisdiction and remand to the trial court to dismiss the action with prejudice,

 rendering the issue regarding Davis’s standing moot. See id. at 275, 643 S.E.2d at

 572.

 B. The Amended Counterclaim

¶ 37 As previously noted, the original counterclaim should have been dismissed as

 requiring impermissible judicial entanglement in ecclesiastical matters due to

 Davis’s request for judicial recognition as the spiritual leader of the Church, as well
 NATION FORD V. DAVIS

 2021-NCCOA-528

 MURPHY, J., concurring in part and dissenting in part.

as the requirements under the later set of bylaws. However, even if the original

counterclaim was overlooked and the amended counterclaim was the sole focus of our

analysis, the amended counterclaim still requires impermissible judicial

entanglement in ecclesiastical matters. The following portions of the amended

counterclaim, which mirror similar requests and references in the original

counterclaim, are ecclesiastical matters requiring impermissible judicial

entanglement:

 35. [Davis] is entitled to judgment declaring that:

 (a) [he] is the Bishop and Senior Pastor of the Church;

 ...

 (d) [and that his] appearances on Church property to
 conduct church services, minister to the congregation, and
 otherwise perform his duties as Bishop and Senior Pastor
 of the Church were and are lawful[.]

 ....

 38. . . . [T]he Third-Party Defendants, purporting to act on
 behalf of and in the name of the Church, have unlawfully
 interfered and will continue to interfere with [Davis’s]
 employment relationship with the Church and with his
 performance of duties as the Bishop and Senior Pastor of
 the Church, unless restrained by this Court.

 39. [Davis] is entitled to a preliminary and permanent
 injunction enjoining, restraining and directing plaintiff
 and the Third-Party Defendants, as follows:

 (a) to allow [Davis] to resume his role and duties as the
 Bishop and Senior Pastor of the Church, with full
 NATION FORD V. DAVIS

 2021-NCCOA-528

 MURPHY, J., concurring in part and dissenting in part.

compensation and benefits, until such time as the Church’s
congregation may vote to remove [him] in accordance with
the requirements of the New Bylaws of the Church;

(b) to refrain from excluding [Davis] from the Church
premises and/or any other Church properties; and

(c) to refrain from taking any action to interfere with,
subvert or disrupt [Davis] in the performance of his duties
as the Bishop and Senior Pastor of the Church.

....

41. A fiduciary relationship of trust and confidence existed
between [Davis], as the Bishop and Senior Pastor of the
Church, and the Third-Party Defendants as Elders of the
Church.

42. A fiduciary relationship of trust and confidence also
existed between the Third-Party Defendants as Elders and
the Plaintiff Church they were supposed to serve.

43. Due to the fiduciary relationship that existed between
them, the Third-Party Defendants were required in equity
and in good conscience to act honestly, in good faith and in
the best interests of the Church and [Davis] as the Bishop
and Senior Pastor of the Church.

44. . . . [T]he Third-Party Defendants[] have breached their
fiduciary duties owed to [Davis] and the Church, in that
the Third-Party Defendants have arrogated to themselves
the sole management and control of the Church and have
prevented [Davis] from exercising his rightful role as the
Bishop and Senior Pastor of the Church, all in violation of
the requirements of the New Bylaws of the Church.

45. As a direct and proximate result of the Third-Party
Defendants’ breaches of their fiduciary duties[,] . . . [Davis]
has been damaged . . . .
 NATION FORD V. DAVIS

 2021-NCCOA-528

 MURPHY, J., concurring in part and dissenting in part.

....

49. The Third-Party Defendants intentionally induced the
Plaintiff church to breach the employment relationship
that existed between the Church and [Davis], and in so
doing the Third-Party Defendants acted with malice and
without justification.

....

52. . . . [T]he Third-Party Defendants have utilized Church
assets to fund this litigation against [Davis].

53. Additionally, the Church maintained a “Key Man”
insurance policy issued by New York Life Insurance
company on the life of [Davis’s] father [who was] his
predecessor as the Bishop and Senior Pastor of the Church,
in a benefit amount believed to be several million dollars.
Upon information and belief, after [Davis’s] father died in
August of 2015, a majority of the benefit amount of that
policy was paid to the Church.

54. Because the Third-Party Defendants arrogated to
themselves all control and management of the Church’s
business affairs and activities, to the exclusion of [Davis]
notwithstanding his status and role as the Bishop and
Senior Pastor of the Church, [Davis] has been unable to
determine how those insurance proceeds have been utilized
by the Third-Party Defendants and whether those proceeds
have been properly devoted to the Church’s benefit.

55. [Davis], as the Bishop and Senior Pastor of the Church,
is entitled to inspect the books and records of the Church,
in order to determine how Church assets and funds have
been utilized and whether any such assets or funds have
been misused or misappropriated by the Third-Party
Defendants.

56. [Davis] is entitled to a complete accounting from the
Church and the Third-Party Defendants for any and all
 NATION FORD V. DAVIS

 2021-NCCOA-528

 MURPHY, J., concurring in part and dissenting in part.

items of Church property and money diverted,
misappropriated, received, used or expended by the Third-
Party Defendants, or any of them.

57. [Davis] is further entitled to have a constructive trust
imposed upon the assets of the Third-Party Defendants, for
the benefit of the Church, in an amount equal to any
Church money or property found by this Court to have been
wrongfully misappropriated or taken by the Third-Party
Defendants, or any of them.

....

59. The Third-Party Defendants . . . formed an agreement
among themselves to do unlawful acts or to do lawful acts
in an unlawful way, resulting in injury to the Third-Party
Plaintiff, [Davis].

60. After [Davis] discovered the existence of the New
Bylaws in November of 2017 and demanded the
resignations of the Third-Party Defendants as Elders of the
Church, the Third-Party Defendants conspired among
themselves to oust [him] and his family members from the
Church and thereby arrogate to themselves full control of
the Church’s operations and activities.

61. Pursuant to their conspiracy, as described above, the
Third-Party Defendants committed, or caused to be
committed, the following overt acts:

....

(b) In January of 2018, the Third-Party Defendants
submitted to [Davis] a purported “evaluation” of his
performance. No such “performance evaluation” had ever
been previously done on the Bishop and Senior Pastor of
the Church, and the Third-Party defendants had no
authority under the New Bylaws to conduct such an
“evaluation.”
 NATION FORD V. DAVIS

 2021-NCCOA-528

 MURPHY, J., concurring in part and dissenting in part.

(c) Throughout 2018 and the first half of 2019, the Third-
Party Defendants refused to meet with [Davis] and instead
actively worked to undermine [his] leadership role as the
Bishop and Senior Pastor of the Church.

....

WHEREFORE, . . . Davis prays the Court for relief as
follows:

...

3. That the [trial] [c]ourt issue an Order requiring the
Church and the Third-Party Defendants to appear and
show cause why [his] Motion for Preliminary Injunction
should not be granted;

4. That, following a hearing on [Davis’s] Motion for
Preliminary Injunction, the [trial] [c]ourt issue an Order of
Preliminary Injunction directing, enjoining and
restraining the Church, the Third-Party Defendants, and
all other persons or entities acting at their instruction or in
concert with any of them, as follows:

(a) to allow [Davis] to resume his role and duties as the
Bishop and Senior Pastor of the Church, with full
compensation and benefits, to include back pay from June
2019, pending further Order of the [trial] [c]ourt or until
such time as the Church’s congregation may vote to remove
[Davis] in accordance with the requirements of the New
Bylaws of the Church;

(b) to refrain from excluding [Davis] from the Church
premises and/or any other Church properties; and

(c) to refrain from taking any action to interfere with,
disrupt or subvert [Davis] in the performance of his duties
as the Bishop and Senior Pastor of the Church.

5. That, following a trial on the merits, the [trial] [c]ourt
 NATION FORD V. DAVIS

 2021-NCCOA-528

 MURPHY, J., concurring in part and dissenting in part.

enter judgment in favor of [Davis] and against the Church
and the Third-Party Defendants on [Davis’s] Counterclaim
and Third-Party Complaint as follows:

(a) Declaring that [Davis] is the Bishop and Senior Pastor
of the Church; that [Davis’s] employment relationship with
the Church is not an “at-will” employment but instead is
an employment relationship governed by the New Bylaws
of the Church; that the purported “termination” of [Davis’s]
employment with the Church, undertaken by the Third-
Party Defendants acting on behalf of and in the name of
the Church, was contrary to the New Bylaws and therefore
unlawful; that [Davis’s] appearances on Church property
to conduct church services, minister to the congregation,
and otherwise perform his duties as Bishop and Senior
Pastor of the Church were and are lawful; and that [Davis]
is entitled to receive back pay and benefits from the Church
from the date of the purported termination of his
employment with the Church.

(b) Entering an Order of Permanent Injunction, directing,
enjoining and restraining the Church, the Third-Party
Defendants, and all other persons or entities acting at their
instruction or in concert with them, to allow [Davis] to
perform his role and duties as the Bishop and Senior Pastor
of the Church, with full compensation and benefits, until
such time as the Church’s congregation may vote to remove
[Davis] in accordance with the requirements of the New
Bylaws of the Church; to refrain from excluding [Davis]
from the Church premises and/or any other Church
properties; and to refrain from taking any action to
interfere with, disrupt or subvert [Davis] in the
performance of his duties as the Bishop and Senior Pastor
of the Church.

....

(d) Ordering the Church and the Third-Party Defendants
to [p]ermit [Davis] to inspect the books and records of the
Church; ordering the Third-Party Defendants to provide a
 NATION FORD V. DAVIS

 2021-NCCOA-528

 MURPHY, J., concurring in part and dissenting in part.

 complete accounting for all items of church money or
 property misappropriated, diverted, received, used or
 expended by the Third-Party Defendants, or any of them;
 and imposing a constructive trust upon the assets of the
 Third-Party Defendants, for the benefit of the Church, in
 an amount equal to any Church money or property found
 to have been wrongfully misappropriated or taken by the
 Third-Party Defendants, or any of them.

 1. “Bishop” and “Senior Pastor”

¶ 38 As identified above, Davis still requests a “judgment declaring that [he] is the

 Bishop and Senior Pastor of the Church” in Paragraph 35(a) of his amended

 counterclaim, and includes repeated statements that he is “the duly installed Bishop

 and Senior Pastor of the Church.” These requests and references require a court to

 determine what constitutes a “bishop” and a “senior pastor,” and how such a leader

 can be “duly installed.” Such a determination would run afoul of our caselaw

 prohibition against judicial “examination of the church’s view of the role of the pastor,

 staff, and church leaders[.]” Harris, 361 N.C. at 273, 643 S.E.2d at 571. The

 ecclesiastical nature of Davis’s requests and references is evidenced by his repeated

 pairing of the positions of “Bishop and Senior Pastor” with “conduct[ing],”

 “resum[ing],” and “perform[ing] his duties,” as well as “exercising his rightful role” in

 the Church. For example, Davis asks for a judicial intervention into the purported

 unlawful interference with his “employment relationship with the Church and with

 his performance of duties as the Bishop and Senior Pastor of the Church[.]” Courts
 NATION FORD V. DAVIS

 2021-NCCOA-528

 MURPHY, J., concurring in part and dissenting in part.

 may not define the role, duties, and services of a church’s leader; but, by affirming its

 denial of the motion to dismiss, that is exactly what the Majority has allowed the trial

 court to do. See id.; supra at ¶¶ 14-15.

 2. Fiduciary Relationship

¶ 39 Further, Davis claims that “[a] fiduciary relationship of trust and confidence

 existed between [him], as the Bishop and Senior Pastor of the Church, and the Third-

 Party Defendants as the Elders of the Church[,]” and that “the Third-Party

 Defendants[] . . . breached their fiduciary duties owed to [Davis] and the Church” by

 “arrogat[ing] to themselves the sole management and control of the Church[.]”

 Davis’s breach of fiduciary duty claim is similar to the plaintiffs’ allegations in Harris.

 Our Supreme Court has already determined that the ecclesiastical entanglement

 doctrine prohibits judicial review of whether a church’s internal governing body

 “breached [its] fiduciary duties by improperly using church funds.” Harris, 361 N.C.

 at 273, 643 S.E.2d at 571. Such a review required an improper “examination of the

 church’s view of the role of the pastor, staff, and church leaders, their authority and

 compensation, and church management.” Id. We similarly cannot examine the role

 and relationship between the elders and a pastor, as it involves an improper review

 of not only roles, duties, and authority, but also church management.

 3. Employment Relationship

¶ 40 Davis also claims “[a] valid employment relationship existed between [him
 NATION FORD V. DAVIS

 2021-NCCOA-528

 MURPHY, J., concurring in part and dissenting in part.

 and] the Church[,] . . . [and] [t]he Third-Party Defendants intentionally induced the

 Plaintiff Church to breach the employment relationship that existed between the

 Church and [Davis], and in so doing the Third-Party Defendants acted with malice

 and without justification.” “[T]he application of a secular standard to secular conduct

 that is tortious is not prohibited by the Constitution,” and tortious conduct could be

 analyzed if neutral laws could be applied. Smith v. Privette, 128 N.C. App. 490, 494,

 495 S.E.2d 395, 397 (marks omitted), appeal dismissed, 348 N.C. 284, 501 S.E.2d 913

 (1998). However, “the decision to hire or discharge a minister is inextricable from

 religious doctrine and protected by the First Amendment from judicial inquiry.” Id.

 at 495, 495 S.E.2d at 398. Whether the decision to fire Davis was due to failure to

 perform a religious role or was nefarious would require the examination of religious

 doctrine, and we cannot allow such an examination.

 4. “Church’s Benefit”

¶ 41 In his fifth claim for relief in the amended counterclaim, Davis argues “the

 Third-Party Defendants have utilized Church assets to fund this litigation against

 [Davis,]” which entitles Davis “to have a constructive trust imposed upon the assets

 of the Third-Party Defendants” in the amount of funds “wrongfully misappropriated

 or taken[.]” According to Davis, he and, by inference, the trial court, must be allowed

 to inspect Church records to determine whether the portion of a keyman life

 insurance policy paid to the Church has “been properly devoted to the Church’s
 NATION FORD V. DAVIS

 2021-NCCOA-528

 MURPHY, J., concurring in part and dissenting in part.

 benefit.”

 Determining whether actions, including expenditures, by a
 church’s [staff and leadership] were proper requires an
 examination of the church’s view of the role of the pastor,
 staff, and church leaders, their authority and
 compensation, and church management. Because a
 church’s religious doctrine and practice affect its
 understanding of each of these concepts, seeking a court’s
 review of the [expenditures] is no different than asking a
 court to determine whether a particular church’s grounds
 for membership are spiritually or doctrinally correct or
 whether a church’s charitable pursuits accord with the
 congregation’s beliefs. None of these issues can be
 addressed using neutral principles of law.

 Harris, 361 N.C. at 273, 643 S.E.2d at 571 (emphasis added). What constitutes the

 proper devotion of life insurance proceeds toward the Church’s benefit is an analysis

 inextricably linked to ecclesiastical issues, and we cannot permit such an analysis.

 5. Control of the Church

¶ 42 Davis’s civil conspiracy claim is replete with references to the Third-Party

 Defendants attempting to “arrogate to themselves full control” of the Church, acting

 with “no authority,” “actively work[ing] to undermine [Davis’s] leadership role,” and

 terminating Davis without the “75% affirmative vote of the congregation” required

 under the bylaws. Judicial engagement with claims concerning membership, roles,

 and duties within the Church requires an analysis we may not conduct. See id.;
 NATION FORD V. DAVIS

 2021-NCCOA-528

 MURPHY, J., concurring in part and dissenting in part.

 Emory, 165 N.C. App. at 492-93, 598 S.E.2d at 670-71.2

 6. Injunctive Relief

¶ 43 Finally, Davis’s prayer for relief requests a judicial determination, via

 injunction, that “allow[s] [Davis] to resume his role and duties as the Bishop and

 Senior Pastor of the Church” until another court order or congregational removal via

 “the requirements of the New Bylaws of the Church” takes effect. He also requests a

 judicial declaration “that [he] is the Bishop and Senior Pastor of the Church[,] . . .

 that the purported ‘termination’ . . . was contrary to the New Bylaws[,] . . . [and] that

 [his] . . . perform[ance of] his duties as the Bishop and Senior Pastor of the Church

 were and are lawful[.]” According to Davis, “the New Bylaws expressly provide[] that

 the Bishop of the Church can be dismissed only by a 75% vote of the congregation

 attending a Special General Meeting called for that purpose. No Special General

 Meeting of the congregation was convened[.]” As previously discussed, the

 ecclesiastical entanglement doctrine prohibits judicial review of roles within a

 church, or of what constitutes an appropriate special meeting or membership within

 a church. See Harris, 361 N.C. at 273, 643 S.E.2d at 571; Emory, 165 N.C. App. at

 492-93, 598 S.E.2d at 670-71. The trial court did not have subject matter jurisdiction

 2 Davis also argues his mother was wrongfully terminated, but he lacks standing to

 bring such a claim. See Munger v. State, 202 N.C. App. 404, 409, 689 S.E.2d 230, 235 (2010)
 (marks omitted) (“The rationale of the standing rule is that only one . . . personally injured .
 . . can be trusted to battle the issue.”), disc. rev. denied, 365 N.C. 3, 705 S.E.2d 734 (2011).
 NATION FORD V. DAVIS

 2021-NCCOA-528

 MURPHY, J., concurring in part and dissenting in part.

 over Davis’s request for a positive injunction in his prayer for relief.

 7. Conclusion

¶ 44 Even assuming, arguendo, we should review the amended counterclaim rather

 than the original counterclaim, each of Davis’s claims require judicial review of

 ecclesiastical matters, which runs afoul of the ecclesiastical entanglement doctrine.

 Davis’s amended counterclaim should have been dismissed for lack of subject matter

 jurisdiction, and we lack subject matter jurisdiction over the amended counterclaim

 on appeal. We should remand to the trial court for dismissal of the amended

 counterclaim, with prejudice. Harris, 361 N.C. at 275, 643 S.E.2d at 572.

 C. Lack of Subject Matter Jurisdiction Over Plaintiffs’ Complaint

¶ 45 “Whether a trial court has subject-matter jurisdiction is a question of law,

 reviewed de novo on appeal. An appellate court has the power to inquire into subject-

 matter jurisdiction in a case before it at any time, even sua sponte.” Henson v.

 Henson, 261 N.C. App. 157, 160, 820 S.E.2d 101, 104 (2018) (citation and marks

 omitted). The complaint is properly analyzed within this appeal, Davis’s original

 counterclaim and amended counterclaim included an answer to the complaint, and

 the Majority does not review whether the trial court had subject matter jurisdiction

 over the matter from the start. See Hayes v. Turner, 98 N.C. App. 451, 454-55, 391

 S.E.2d 513, 515 (1990) (“[The plaintiff’s] complaint in summary ejectment alleges that

 there was no rent and that no lease existed. The record contains neither allegations
 NATION FORD V. DAVIS

 2021-NCCOA-528

 MURPHY, J., concurring in part and dissenting in part.

 nor evidence of a landlord-tenant relationship, and [the plaintiff] also failed to allege

 any of the statutory violations. [The plaintiff’s] amended complaint also fails to assert

 the required allegations for summary ejectment or for any other cause of action. We

 therefore, sua sponte, conclude that the trial court lacked subject matter jurisdiction

 to hear the summary ejectment action. We therefore vacate the trial court’s grant of

 summary judgment for [the] plaintiff on [the] plaintiff’s cause of action and remand

 for dismissal of that action.”). I would review the complaint to see whether it too runs

 afoul of the ecclesiastical entanglement doctrine.

¶ 46 The complaint alleges that “[t]he Plaintiff is the owner and lawful possessor of

 the Premises[,]” “[Davis] continues to attempt to hold unauthorized services and

 meetings at Plaintiff’s facilities[,]” “[Davis] has disrupted the ongoing legitimate

 ministries of the Plaintiff and prevented the Plaintiff from carrying on its mission[,]”

 and “[Davis], by his unauthorized collection and retention of funds and by his failure

 to return Plaintiff’s property, has committed conversion of Plaintiff’s property.” Much

 like Davis’s counterclaims, these allegations require improper judicial inquiry into

 Church governance and membership as it relates to the appropriate leaders and

 owners of the premises, as well as who has the authority to approve Davis in his

 attempt to hold services and meetings. See Harris, 361 N.C. at 273, 643 S.E.2d at

 571; Emory, 165 N.C. App. at 492-93, 598 S.E.2d at 670-71. Further, in addition to

 these allegations, the complaint requires impermissible analysis of what constitutes
 NATION FORD V. DAVIS

 2021-NCCOA-528

 MURPHY, J., concurring in part and dissenting in part.

 the legitimate ministry and mission of the Church: “[Davis] has disrupted the ongoing

 legitimate ministries of the Plaintiff and prevented the Plaintiff from carrying on its

 mission[.]” See generally Piner, 267 N.C. at 77, 147 S.E.2d at 583. Finally, the

 complaint requests judicial analysis of alleged unauthorized conversion of Church

 property, which is similar to Davis’s claims and those of the plaintiffs’ improper

 request in Harris for judicial determination of whether expenditures were proper.

 See Harris, 361 N.C. at 273, 643 S.E.2d at 571.

¶ 47 The complaint also requires judicial review of roles within and doctrine of the

 Church, which runs afoul of the ecclesiastical entanglement doctrine. For this reason,

 the trial court did not have subject matter jurisdiction over the complaint, and we

 must remand to the trial court to dismiss it with prejudice along with the original

 counterclaim and amended counterclaim. See id. at 275, 643 S.E.2d at 572.

 CONCLUSION

¶ 48 Our courts may not intrude on church disputes that cannot be resolved via only

 neutral principles of law. Such judicial intrusion constitutes impermissible

 entanglement in ecclesiastical matters and is prohibited by the First Amendment.

 The determination of issues from Davis’s original counterclaim requires judicial

 review of ecclesiastical matters. Even if we were to review Davis’s amended

 counterclaim, each claim still requires judicial review of ecclesiastical matters.

 Finally, the original complaint similarly requires judicial review of ecclesiastical
 NATION FORD V. DAVIS

 2021-NCCOA-528

 MURPHY, J., concurring in part and dissenting in part.

 matters. As a result, the trial court lacked subject matter jurisdiction over the

 entirety of this matter.

¶ 49 While I concur that the Order is properly before us as an interlocutory appeal,

 I would reverse the trial court’s order denying the motion to dismiss for lack of subject

 matter jurisdiction, rendering the issue regarding Davis’s standing moot. I would

 also hold the trial court lacked subject matter jurisdiction over the complaint,

 counterclaim, and amended counterclaim and remand for the trial court to dismiss

 the action with prejudice. For these reasons, I respectfully dissent.